IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUSSELL H. ZITTLOSEN,

        Plaintiff,

vs.                                                      CIVIL NO. 98-1163 SC/LFG

CITY OF RIO RANCHO et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING REQUEST FOR DISCOVERY AND DENYING MOTION FOR DEFERRAL OF RULING ON MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff Russell H. Zittlosen's ("Zittlosen") Motion for Deferral of Ruling on Defendants' Motion for Summary Judgment Pending Discovery].[1]

On November 20, 1998, Defendant police officers ("Officers") served a Motion for Summary Judgment on Zittlosen. At the Rule 16 conference conducted December 4, 1998, the Court was advised that the Officers' motions were based, in part, on the defense of qualified immunity.

A qualified immunity defense is available to protect public officials performing discretionary functions from the burdens not only of trial, but discovery as well. Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727 (1982); Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988), see also Gallegos v. City & County of Denver, 984 F.2d 358 (10th Cir.), *cert.*

---

[1] In accord with the district's motion package rule, the motion was not filed, but served on opposing counsel. At the Rule 16 scheduling conference, the Court requested a copy of Plaintiff's Fed. R. Civ. P. 56(f) affidavit. Based on the Court's review of the affidavit, briefing is not necessary, this matter may be resolved based on Plaintiff's submission.

*denied*, 508 U.S. 972 (1993) ("[A] successful claim of qualified immunity allows a public official to avoid the burdens of discovery and litigation, as well as liability.") Thus, when qualified immunity is raised by way of motion, as it is here, the Court is required to stay all discovery, except that discovery necessary on the issue of qualified immunity. Lewis v. City of Fort Collins, 903 F.2d 752, 758 (10th Cir. 1990).

## Officers' Prima Facie Showing

In support of their motion for summary judgment, the Officers rely on a dozen or so statements of fact, paraphrased as follows: (1) Zittlosen's former spouse, Angela Zittlosen ("Angela"), filed a action in Bernalillo County District Court to dissolve her marriage from Zittlosen; (2) The Court entered a temporary domestic order in the divorce action in accord with the Family Violence Protection Act, NMSA 1978 § 40-13-1 *et. seq.*, which directed that "neither party shall intimidate, threaten, harass, molest, injure or physically or mentally abuse the other party, any child of either party. . . ."; (3) On November 22, 1996, Angela's attorney filed a verified application for a temporary restraining order, seeking to restrain Zittlosen from engaging in certain conduct; (4) In response to the application for the temporary restraining order, State District Judge William F. Lang entered a temporary restraining order and notice of preliminary injunction on November 22, 1996. The judge's order provided, "Russell H. Zittlosen is restrained from removing the parties' minor child from her school, or from the physical custody of the petitioner unless and until the formal written interim time sharing arrangement has been adopted by the parties or this court."; (5) On November 27, 1996, so as to avoid the hearing on the preliminary injunction, Zittlosen and Angela stipulated to the entry of an order which provided that neither party shall have any direct contact with the other. All contact shall be between counsel; neither party shall interfere with the periods of responsibility

of the other with the child. Neither party shall cause or allow the parties' minor child to be removed from the custody of the other, the child's school or any care-giver, except as specifically provided for in a formal, written time sharing agreement . . . ; that Zittlosen acknowledges that a violation of the terms of this order shall constitute contempt of this court; (6) On December 13, 1996, Angela contacted the City of Rio Rancho's Department of Public Safety (police) and alleged that Zittlosen violated the terms of the restraining order; police officers Gentry and Connors responded to Angela's call and found Zittlosen with his daughter sitting in a 1981 Volvo, which was parked in the driveway of Angela's residence. Angela's babysitter, Cathy Bernard, told officers that Zittlosen came to her home and even though the babysitter reminded him of the restraining order and asked him to leave, Zittlosen took the child from the babysitter and placed her in his car. The police were called; (7) The officers were shown court documents and informed by Angela that a restraining order had been entered which prohibited Zittlosen from making contact with Angela or the child without Angela's prior permission, and that Zittlosen had contact with the child and took her without permission. There was no written agreement giving Zittlosen the right to have custody of the child on the date of the incident; (8) Angela told the police that she was in fear for her safety and for the safety of her daughter because Zittlosen previously had threatened to cause harm to the daughter Catherine and to remove the child from the State of New Mexico; (9) The officers learned that the temporary domestic order had been served on Zittlosen, that he had executed the stipulated injunction order; that the order was to continue in effect during the pendency of the case unless modified by the court order; and that paragraph 14 of the temporary domestic order warned the parties that failure to comply with the court's order could result in a finding of contempt and could subject the violator to fine, imprisonment, or the imposition of other sanctions; (10) The officers were aware that William

F. Lang, the judge to whom the case was assigned, was a judge of general jurisdiction sitting in a court with jurisdiction over domestic relations matters. While the stipulated order was not signed by Judge Lang, the officers were advised by Angela that the stipulated order was in effect as between the parties from November 27, 1996, the date it was signed by the parties, and submitted to Judge Lang.

Based on the foregoing, including the officers' observations of Zittlosen with the child in his custody, and having learned that Zittlosen removed the child from the child's care giver without written consent, the officers concluded that they had probable cause to believe that Zittlosen violated a restraining order and took him into custody for the violation.

In addition to this information concerning the first arrest, the officers submitted affidavits concerning Zittlosen's second arrest. (1) Officers were contacted on February 2, 1997 and asked to respond to a complaint by Angela concerning a violation of a restraining order; (2) The officers arrived at Furr's Supermarket at 3301 Southern Boulevard, Rio Rancho, New Mexico, where they were provided with copies of two restraining orders; one order stated that Zittlosen was not to come within one-hundred yards of Angela or within one-hundred yards of her residence or of the child's care giver. The City of Rio Rancho's standard operating procedures provide that an officer may effect an arrest immediately when a person has "violated a protection order pursuant to the Family Violence Protection Act."

(11) Angela advised the officers that she was shopping at Furr's Supermarket when Zittlosen approached her from behind and made verbal contact with her. Angela had her daughter, Catherine, with her and Zittlosen made physical contact with both her and the daughter; (5) Angela immediately left the area and made an emergency call for assistance. The officers arrived and met with Zittlosen.

4

He was escorted outside of the supermarket and questioned in a less conspicuous area about the contact he made with Angela and the child; (6) The officers' affidavit states that Zittlosen advised that he had come to the store to shop and admitted bumping into Angela and Catherine while shopping and prolonging the contact by approaching closely and hugging the child. Angela advised the officers that the Zittlosen was aware that she stopped at the Rio Rancho Furr's Supermarket on Sunday afternoons. Zittlosen advised the officer that he had driven from Albuquerque to the Rio Rancho Furr's store because of the sales. The officers concluded that the statement was improbable given the number of Furr's stores located in Albuquerque, which were much closer to Plaintiff's residence than the Rio Rancho store. Based on their investigation, and a review of the restraining orders, the officers believed Zittlosen intentionally went to the Rio Rancho store to encounter Angela and the parties' child. They found probable cause to believe that Zittlosen violated Judge Lang's restraining orders. Based on that determination, Zittlosen was arrested.

**Plaintiff's Request for Discovery**

Zittlosen requests an opportunity to engage in discovery to respond to the motion, but fails to state what discoverable information is available or how that information will assist in defeating the Officers' *prima facie* showing. For example, Zittlosen states that:

> Zittlosen will need discovery on factual matters pertaining to the essential issues of probable cause, including:
>
> A. the City of Rio Rancho's policies and training regarding warrantless arrests on restraining orders, including orders issued under the Family Violence Protection Act;
>
> B. the officers' training and experience regarding warrantless arrests on restraining orders, including orders issued under the Family Violence Protection Act;

5

> C. Officers Gentry and Chapman's "belief that the . . . orders . . . constituted an order of protection issued pursuant to the Family Violence Protection Act;"

Zittlosen states that he "seeks to establish that the officers did not in fact believe and that a reasonably prudent officer would not have believed that the divorce proceeding orders were protective orders issued pursuant to the Family Violence Protection Act."

Zittlosen contends that he is unable to respond to the Officers' qualified immunity motion unless he can conduct discovery on the City's policies and training, the officers' specific training and the officers' beliefs.

## **Analysis**

It is clear that limited discovery on the issue of qualified immunity can proceed when motions for qualified immunity have been filed. Lewis v. City of Fort Collins, 903 F.2d 752. Lewis, however, makes clear that a plaintiff must come forward with a Rule 56(f) affidavit explaining "how discovery will enable them to rebut a defendant's showing of objective reasonableness." Lewis, 903 F.2d at 758 (quoting Jones v. City & County of Denver, 854 F.2d 1206, 1211 (10th Cir. 1988)).

While Zittlosen submitted a Rule 56(f) request, the areas of inquiry are vague and do not aptly demonstrate how such information would assist in rebutting a *prima facie* showing. Indeed, in Ulibarri v. Marcillas, CIV 92-1312, Judge Parker commented on an analogous request for discovery.

> Even had Plaintiff made a proper Rule 56(f) request, the Court's discretion in granting such a motion where qualified immunity is at issue is limited and the Plaintiff's burden of demonstrating the need for discovery is greater. See Lewis, 902 F.2d at 758. The limitation on Rule 56(f) requests in the context of motions premised on qualified immunity is based on the nature of qualified immunity itself. The Supreme Court has instructed that the purpose of the defense is to protect public officials performing discretionary duties from the burdens not only of trial, but discovery as well. Harlow v. Fitzgerald

[cite omitted]; Anderson v. Creighton [cite omitted]; see also Gallegos v. City and County of Denver [cite omitted].

This Court agrees with Judge Parker's analysis that the plaintiff's burden in demonstrating a need for discovery is great. Here, Zittlosen has simply failed to convince the Court that discovery of the City of Rio Rancho's policies and training regarding arrests on restraining orders, or discovery concerning the individual officer's training and experience regarding warrantless arrests on restraining orders would be of assistance in rebutting the Officers' *prima facie* showing. Zittlosen's discovery request is geared toward showing that the restraining orders were not valid under the Family Violence Protection Act, and the officers knew, or should have known, as a result of their training, that the orders were improper, and, therefore, should not have been enforced.

This same argument was soundly rejected in Valdez v. City & County of Denver, 878 F.2d 1285 (10th Cir. 1989). There, the Tenth Circuit stated, "We hold that an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." Id. at 1286. The circuit recognized that the power to execute judicial decrees was an integral part of the judicial process and that officers, acting on facially valid warrants, ought to enjoy the same type of immunity available to judges.

> Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. [cite omitted]. If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties. As the Ninth Circuit aptly reasoned: "The fearless and unhesitating execution of court orders is essential. If the court's authority and ability to function are to remain uncompromised." [cite omitted]. Absolute immunity for officials assigned to carry out a judge's orders is necessary to ensure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.

7

Id. at 1288.

In Valdez v. City & County of Denver, the circuit noted that police officers are not required to act as "pseudo-appellate courts" scrutinizing judges' orders and deciding whether or not they should be obeyed. Valdez at 1289 (citing Henry v. Farmer City State Bank, 808 F.2d 1228, 1239 (7th Cir. 1986)).

Based on a review of the Rule 56(f) affidavit submitted, the Court determines that the discovery Zittlosen intends to take would not be of material assistance in responding to the motion for summary judgment, and, accordingly, the protections recognized by the United States Supreme Court in Harlow v. Fitzgerald, and this circuit in Pueblo Neighborhood Health Centers, Inc. v. Losavio, and Gallegos v. City & County of Denver will be applied, and the Officers will not be subjected to the burdens of discovery pending the Court's determination on the issue of qualified immunity.

Zittlosen concedes that the issue before the Court can probably be determined without the need to engage in discovery. Accordingly, the Court denies Zittlosen's request for discovery, and, consequently, denies Zittlosen's motion for deferral on a ruling on the motion for summary judgment pending discovery.

                                        */s/ Lorenzo F. Garcia*
                                        Lorenzo F. Garcia
                                        United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Jane Gagne, Esq.

ATTORNEY FOR DEFENDANTS:
Randy S. Bartell, Esq.