CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 JUN 25 PM 1: 19

*Robert M. March*
CLERK-SANTA FE

RUSSELL H. ZITTLOSEN,

Plaintiff,

vs.

No. CV 98-1163 SC/LG

CITY OF RIO RANCHO, OFFICERS DAVID
GENTRY, DALE CHAPMAN, GREG CONNORS,
and MARK NAWMAN, in their individual
capacities as employees of the City of Rio Rancho;
BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF SANDOVAL, and JOHN DOES 1-10, in
their individual capacities as employees of the
Sandoval County Detention Center,

Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on (1) Plaintiff's Objections to Memorandum

Opinion and Order Denying Request for Discovery and Denying Motion for Deferral of

Ruling on Motion for Summary Judgment, filed January 11, 1999 (Doc. No. 29), and

(2) Defendants' Motion for Summary Judgment, filed by Defendants City of Rio Rancho

and Officers Gentry, Chapman, Connors and Nawman ("the Rio Rancho Defendants") on

January 4, 1999 (Doc. No. 25). For the reasons contained in this opinion, the objections

will be OVERRULED, and the motion for summary judgment will be GRANTED IN

1

33

PART and DENIED IN PART.

## BACKGROUND

This is a civil rights action in which the Plaintiff claims he was subjected to two unlawful warrantless arrests by Rio Rancho police officers. He also claims he was illegally detained in the Sandoval County Detention Center after each arrest. He brings his action under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights to be free of unlawful arrest and unconstitutional seizure, and under the New Mexico Tort Claims Act for alleged violations of state tort law and the New Mexico Constitution. Federal jurisdiction is not disputed and is hereby determined to be present pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff invokes the Court's supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1357.

Plaintiff was arrested twice by Rio Rancho police officers for allegedly violating restraining orders issued by the court in his divorce proceedings. He alleges that the officers lacked probable cause to arrest him without a warrant. He also alleges that his rights were violated when he was held for over 48 hours without bond and without an arraignment or probable cause hearing at the Sandoval County Detention Center after each arrest.

The individual named Defendants are police officers employed by the City of Rio Rancho. They are sued in their individual capacities for their involvement and participation in the arrests. Defendant City of Rio Rancho is sued under § 1983 for its

2

alleged failure to train and supervise its officers in proper warrantless arrest procedures and for allegedly maintaining an illegal custom and policy concerning warrantless arrests. The City's liability under the state tort claims is premised on the doctrine of respondeat superior. The Rio Rancho Defendants and Defendant Board of County Commissioners of Sandoval County and John Does 1-10 are sued for the alleged failure to provide Plaintiff with a timely probable cause determination when he was detained at the Sandoval County Detention Center.

## I.    PLAINTIFF'S OBJECTIONS

Defendants served their motion for summary judgment on Plaintiff on November 20, 1998. In it they raise the defense of qualified immunity on the federal claim involving the warrantless arrests. The Magistrate Judge learned of the existence of the motion at a Rule 16 scheduling conference on December 4, 1998, and shortly thereafter he imposed a stay on discovery (Doc. No. 18). Plaintiff then served on Defendants a "Rule 56(f) motion"[1] entitled Motion for Deferral of Ruling on Defendants' Motion for Summary Judgment Pending Discovery, in which he argued that he needed limited discovery to respond fully to the summary judgment motion. Plaintiff's motion was denied by the Magistrate Judge without further briefing on December 23, 1998 (Doc. No. 23). Plaintiff objects to the Magistrate Judge's denial of his (unfiled) Rule 56(f)

---

[1] Rule 56(f) of the Federal Rules of Civil Procedure provides that a court may defer a decision on a motion for summary judgment if "the party opposing the motion ... cannot for reasons stated present by affidavit facts essential to justify the party's opposition...."

motion.

Plaintiff's objections will be overruled. I do not believe that discovery on the issue of probable cause to arrest would affect the outcome of my qualified immunity analysis. There are no disputed issues of material fact relating to the facts and circumstances known to the arresting officers at the time of the arrests. Therefore, the stay on discovery related to that issue was proper.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The individual Rio Rancho police officers claim they are entitled to qualified immunity in connection with their arrests of the Plaintiff.

### A.    Summary Judgment and Qualified Immunity Standards

"Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When the qualified immunity defense is brought up on a summary judgment motion, "the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue." Baptiste, 147 F.3d at 1255. Only if the plaintiff establishes both the facts to support the violation of a federal right and that

4

the law was clearly established does the normal summary judgment burden shift back to the defendant (to show that no material issues of fact remain and that she is entitled to judgment as a matter of law); otherwise the court must grant the defendant qualified immunity. Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 (10th Cir. 1994).

An objective standard is applied in the qualified immunity analysis to determine whether a defendant violated a clearly established federal right of which a reasonable person would have known. Pallottino, 31 F.3d at 1026. In a case alleging a violation of the Fourth Amendment right to be free from a warrantless arrest, the question is whether the arresting officer had probable cause to believe a crime had been or was being committed. Baptiste, 147 F.3d at 1256; Jones v. City and County of Denver, 854 F.2d 1206, 1208 (10th Cir. 1988). All facts are viewed in the light most favorable to Plaintiff. Walter v. Morton, 33 F.3d 1240, 1242 (10th Cir. 1994).

## B.    Chronology and Court Orders

Plaintiff Russell Zittlosen and his then-wife Angela Zittlosen were undergoing a divorce in Bernalillo County, New Mexico in late 1996. They were parents of a seven-year-old daughter. When the divorce was filed, a Temporary Domestic Order ("TDO") was entered by the Honorable William F. Lang, the judge presiding over the divorce, on October 2, 1996. The TDO is designed to maintain the status quo between the parties in matters of finances and property, and it encourages cooperation in matters of living arrangements and child custody. It also orders the parties not to cause injury to each

other or to other persons involved in the divorce and custody proceedings.

Problems developed early in the divorce and Angela Zittlosen filed an Application for Temporary Restraining Order ("TRO") against Plaintiff on November 22, 1996. In it she alleges that the parties were unable to agree on custody arrangements because Russell Zittlosen was not cooperating. She also alleges that Russell showed up at the child's school and announced he would take her from school, that he was residing in Louisiana and had stated his desire to remove the child to Arizona. She also alleges that she is fearful that Russell "will remove the child from the state, or otherwise secret the child." Def. Ex. B ¶8 at 2.[2] Judge Lang issued a TRO on the same date which restrains Russell from removing the child from her school or from the physical custody of Angela without a formal written time sharing arrangement. A preliminary injunction hearing was set for December 2, 1996, and the TRO states that it will not expire until that hearing. It then advises Plaintiff how to object to the TRO, and provides that "otherwise, this Order shall remain in effect during the pendency of this action." Def. Ex. A-(B) at 2.

Plaintiff did not object to the TRO; the parties entered into a Stipulated Order on November 27, 1996, and vacated the preliminary injunction hearing. The Stipulated Order provides as follows:

> 1. Neither party shall have any direct contact with the other. All contact shall be by and between counsel.

---

[2] Plaintiff disputes that he ever made such threats, but he does not dispute that the allegations were made by Angela.

> 2. Neither party shall interfere with the periods of responsibility of the other with the child. Neither party shall cause or allow the parties' minor child to be removed from the custody of the other, the child's school or any care-giver, except as specifically provided for in a formal, written timesharing agreement.

Def. Ex. A-(C) ¶¶1,2 at 1. The Stipulated Order also allows Plaintiff to take the child to Arizona for the Thanksgiving weekend, with strict conditions. It also states: "a violation of the terms of this Order shall constitute Contempt of this Court." Id. ¶3(e) at 2. Russell Zittlosen took the child to Arizona for Thanksgiving, but the Stipulated Order was not filed until December 16, 1996.

On December 13, 1996, after returning from an out-of-state work trip, Russell Zittlosen drove to Angela's home looking for the child. Finding her not at home, he went across the street to the babysitter's home and took the child to his car where he remained until Angela Zittlosen returned. A verbal disturbance occurred between the parties and Angela called the police. Officers David Gentry and Greg Connors responded to the call. After talking with Angela Zittlosen, Russell Zittlosen, and the babysitter, and examining some or all of the divorce case orders, Officer Gentry arrested Plaintiff for "contempt of court" and "restraining order violation." He transported Plaintiff to the Sandoval County Detention Center ("SCDC") where he filled out an arrest report, an incident report, and a "Statement of Probable Cause." He gave Plaintiff a copy of the latter document, and placed copies of his reports and the statement in the distribution box for the Sandoval County Magistrate Court at SCDC. Plaintiff remained at SCDC for five days without a

probable cause determination by a Magistrate Judge.

On December 16, 1996, Angela Zittlosen filed an Affidavit in the divorce case in an effort to have Plaintiff held in civil contempt for the December 13 incident. In it she alleged that Russell violated the TDO and the Stipulated Order by making threats against, harassing, molesting, and mentally abusing her. Specifically related to the incident at the babysitter's home, Angela alleged:

> a) that [Russell Zittlosen] threatened [her] life, to wit: that he stated that if he was not allowed to take the child from the care-giver's residence, that [she] would see a side of him that had not been seen for twenty years, that if he was arrested for the incident at the care-giver's residence that [she] would simply "disappear" and never be seen again, and that he would probably spend the rest of his life in jail. Further, that when he got out of jail after the weekend, that he would go to the child's school and remove both her and the care-giver's seven year old child from school, and that they would not be seen again. Finally, that all, or most of these comments were made in the presence of the parties' seven year old child.

Def. Ex. D ¶5(a) at 2-3. Plaintiff denies the truth of these allegations, but again, he does not deny that they were made.

On December 18, 1996, the fifth day of Plaintiff's incarceration, Plaintiff's divorce lawyer arranged to have him transported from SCDC to the Bernalillo County Detention Center. A hearing was held before Judge Lang on that date at which both parties were present. Judge Lang issued a Minute Order in which he released Plaintiff from custody, and ordered that he "shall not come within 100 yards of Petitioner (at or within 100 yards of her residence) or of the child's caregiver." Def. Ex. E-(A).

On February 2, 1997, Plaintiff was living in the north valley of Albuquerque, close to the bridge across the Rio Grande river that connects the city of Albuquerque with the city of Rio Rancho. He drove to the Furr's supermarket in Rio Rancho, and had what he terms a chance encounter with Angela Zittlosen and their child in the store. The child ran up and hugged him, and he came within about 20 feet of Angela Zittlosen. He then proceeded to the check-out counter with his groceries, and Angela Zittlosen called the police. Officers Dale Chapman and Pete Camacho responded to the call. After the officers talked with Angela Zittlosen and examined the Minute Order and the Stipulated Order, the police officers escorted Plaintiff out of the store and questioned him about the contact. Officer Chapman arrested Plaintiff for "contempt of court" and "restraining order violation." He transported Plaintiff to the Sandoval County Detention Center ("SCDC"), filled out an arrest report, an incident report, and a "Statement of Probable Cause." He gave Plaintiff a copy of the statement and placed the original in the mail box for the Sandoval County Magistrate Court at SCDC. Plaintiff remained in SCDC for three days; no Magistrate Judge performed a probable cause determination before his release from jail.

## C.     Warrantless Arrests - Fourth Amendment

A person has a federally-protected right under the Fourth Amendment to the United States Constitution not to be arrested without a warrant unless the officer has probable cause to believe a crime has been or is being committed. Beck v. Ohio,

9

379 U.S. 89, 91 (1964); Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995).[3] An

arresting officer must have probable cause to believe not only that the suspect has

committed an act, but also that the act constitutes a crime. Here, Plaintiff was arrested

both times for "contempt of court" and "violation of restraining order." The first

question, then, is whether the officers had probable cause to believe that contempt of

court or violating a restraining order is a crime. If so, then I must determine whether the

officers had probable cause to believe that Plaintiff had violated such an order.

### 1. Violation of the New Mexico Family Violence Protection Act is a Misdemeanor.

Defendants point to the Family Violence Prevention Act, N.M. Stat. Ann. 1978

§ 40-13-1 *et seq.* (1994 Repl. Pamp. and 1998 Supp.) (the "FVPA" or the "Act"), which

provides that violating an order of protection granted by a court under the Act is a

misdemeanor. § 40-13-6(E) (1998 Supp.). They contend the arresting officers had

probable cause to believe that Plaintiff had violated an order of protection entered

pursuant to the FVPA, which is intended to provide protection to victims of domestic

abuse. Plaintiff argues, however, that violation of non-FVPA restraining orders is not

ordinarily a criminal offense, and that the officers did not have probable cause to believe

that the orders Plaintiff is accused of violating were granted under the FVPA.

---

[3] Although New Mexico common law requires both probable cause and exigent circumstances to make a warrantless arrest, Campos v. State, 117 N.M. 155, 159, 870 P.2d 117, 121 (1994), violation of this more rigorous standard would not give rise to a federal civil rights violation.

The Act provides in pertinent part:

"Domestic abuse" means any incident by a household member against another household member resulting in: ... (2) severe emotional distress; ... (4) a threat causing imminent fear of bodily injury by any household member; ... (10) harassment; or (11) harm or threatened harm to children as set forth in the paragraphs of this subsection. § 40-13-2(C) (1998 Supp.).

"Order of protection" means a court order granted for the protection of victims of domestic abuse. § 40-13-2(E) (1998 Supp.).

Upon finding that domestic abuse has occurred, the court shall enter an order of protection ordering the respondent to refrain from abusing the petitioner or any other household member. The court shall specifically describe the acts the court has ordered the respondent to do or refrain from doing. ... § 40-13-5(A) (1994 Repl. Pamp.).

The [protective] order shall contain a notice that violation of any provision of the order constitutes contempt of court and may result in a fine or imprisonment or both. § 40-13-5(B) (1994 Repl. Pamp.).

An order of protection granted under the Family Violence Protection Act ... shall be filed with the clerk of the court and a copy shall be sent by the clerk to the local law enforcement agency. The order shall be personally served upon the respondent, unless he or his attorney was present at the time the order was issued. ... § 40-13-6(A) (1998 Supp.).

A peace officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has violated an order pursuant to this section. § 40-13-6(C) (1998 Supp.).

A person who allegedly has been a victim of domestic abuse may request the assistance of a local law enforcement agency. § 40-13-7(A) (1998 Supp.).

A local law enforcement officer responding to the request for assistance shall be required to take whatever steps are reasonably necessary to protect the victim from further domestic abuse, including: ... (5) arresting the abusing household member when appropriate and including a written

statement in the attendant police report to indicate that the arrest of the abusing household member was, in whole or in part, premised upon probable cause to believe that the abusing household member committed domestic abuse against the victim. ... § 40-13-7(B)(5) (1998 Supp.).

Plaintiff contends that as a matter of law the orders in this case were not issued pursuant to the FVPA because: (1) there had never been a judicial finding that an act of "domestic abuse has occurred," as required by § 40-13-5(A); (2) none of the orders contained a notice that authorizes immediate arrest, as required by § 40-13-5(B); (3) a copy of the orders was not sent by the clerk to the local law enforcement agency, as required by § 40-13-6(A); and (4) the arresting officers did not include written statements in their police reports to indicate that the arrests were premised upon probable cause to believe that Plaintiff had committed domestic abuse, as required by § 40-13-7(B)(5).

Plaintiff's argument that the Act requires a judicial finding that "an act of domestic abuse has occurred" is unavailing. Although the orders do not contain such a finding, allegations of threats to remove the child from the jurisdiction had been made at the time the court issued the TRO, and allegations of more serious threats of harm to Angela, the parties' child and the babysitter's child had been made at the time the court issued the Minute Order. Such allegations, if true, arguably meet the definition of "domestic abuse" in § 2(C) of the Act.

Plaintiff also argues that none of the divorce orders authorize immediate arrest, but in my view the Act only requires a notice that violation of an order "constitutes contempt

of court and may result in a fine or imprisonment or both." § 40-13-5(B). It does not require notice that violation may result in immediate warrantless arrest. The TDO contains a notice similar to that required by the Act: "FAILURE TO FOLLOW AN ORDER CAN CONSTITUTE CONTEMPT OF COURT, AND MAY SUBJECT THE VIOLATOR(S) TO FINE IMPRISONMENT OR OTHER SANCTIONS. ..." Def. Ex. A-(A) ¶14 at 3. The Stipulated Order warns that a violation "shall constitute contempt of this Court." Def. Ex. A-(C) at 2. The similarity of the warning in the TDO to the notice required by the Act is objectively apparent.

Plaintiff finds significance in the fact that a copy of the orders was not sent by the court clerk to the local law enforcement agency. He argues that the officers acted unreasonably because either they did not check whether orders were on file or they did check and learned that no orders were on file. With respect to the February arrest Plaintiff states in his affidavit: "We were still parked in the police car in the Furr's parking lot, when I heard the dispatcher on the police radio state that there was nothing on file on me." Pl. Ex. A ¶15 at 4. Viewed in a light most favorable to Plaintiff, this indicates the officers knew that a protective order had not been filed against Plaintiff under the FVPA with the Rio Rancho police. However, even if that is true, it does not vitiate probable cause to believe the orders the officers examined and were told about were issued under the Act. My interpretation of the filing requirement of § 6(A)of the Act is that it is designed to provide further protection for a victim of domestic abuse. If

13

the order is on file with the law enforcement agency, the officer who responds to the call can still arrest the violator even if the victim cannot produce her copy of the order. I doubt that failure to file the protective order with the law enforcement agency would negate the validity of the order.

Plaintiff's argument that the arresting officers did not include written statements in their police reports to indicate that the arrests were premised upon probable cause to believe that Plaintiff had committed domestic abuse is also unconvincing. Plaintiff was not arrested for domestic abuse per se, but for violating restraining orders. The reports clearly indicate that is what the officers believed they were arresting Plaintiff for.

For purposes of this analysis, I assume that the orders issued in the divorce case do not constitute orders of protection granted under the FVPA. Defendants argue that the orders they saw at the times of the arrests bear sufficient similarity in content and purpose to be reasonably regarded as FVPA protective orders.

It is undisputed that at the time of the December 13 arrest, Officer Gentry was shown copies of the TDO and of the Stipulated Order which, although not yet filed in the court case, had been agreed to by the parties. Judge Lang was known by the officers to be a judge of a court with jurisdiction in domestic relations matters, including the FVPA. Plaintiff disputes that the officers were shown a copy of the TRO, but it is undisputed that they were at least told by Angela Zittlosen and/or the babysitter that there was an order restraining Plaintiff from coming to the Zittlosen residence or having contact with the

14

child without a formal written agreement.

My review of the three orders in existence at the time of the December arrest convinces me that it was objectively reasonable for Officer Gentry to believe that the orders, when considered together, constituted a valid and enforceable order of protection entered by a court pursuant to the Act. The language of the orders establishes that they were entered to prevent domestic abuse and family violence. The TRO specifically restrains Plaintiff from removing the child from her school or from Angela Zittlosen's physical custody until a written time sharing arrangement exists. The Stipulated Order forbids either party from directly contacting the other, and forbids them from removing the child from the custody of the other parent, the child's school or any care-giver without a formal written time sharing agreement.

By the time of the February 2 incident, Judge Lang had signed both the Stipulated Order agreed to by the parties in November and the Minute Order requiring Plaintiff to keep a distance of 100 yards from Angela Zittlosen. It is undisputed that at least two of the divorce orders were presented to Officer Chapman upon his arrival at the Furr's supermarket, although Plaintiff says he would need discovery to know which ones they were. Viewed objectively, I conclude it was reasonable for Officer Chapman to believe that the orders he was shown constituted an order of protection issued pursuant to the Act.

Police officers cannot be charged with an accurate and detailed legal analysis of such orders at the scene of a domestic disturbance. *See* <u>Davis v. Sherer</u>, 468 U.S. 183,

196 (1984) (police officers often make close decisions under pressure); Habiger v. City of Fargo, 80 F.3d 289, 295-96 (8th Cir. 1996) (police entitled to make reasonable errors so they do not always err on side of caution). The arrests of Plaintiff were "a practical answer to a difficult [domestic] situation." Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983). The Act gives police broad powers and strong duties to arrest alleged abusers and violators of orders. To make them scrutinize closely the wording of orders that bear such strong indicia of protective orders would be unreasonable. Perhaps if state court decisions interpreting the Act were in existence that gave police officers more guidance on this matter, they could be held to a higher standard of analysis of the orders themselves, but Plaintiff has not pointed to such decisions.

### 2. Probable Cause To Believe a Violation Had Occurred.

Having concluded that in each instance, the arresting officers had reason to believe that the orders were issued pursuant to the Act, violation of which would constitute a misdemeanor, I next turn to an analysis of the second part of the equation: did the officers have probable cause to believe Plaintiff had committed the misdemeanor of violating the orders?[4] If so, there was probable cause to arrest Plaintiff and the officers

---

[4] I note that New Mexico common law provides that an officer cannot make a warrantless arrest for a misdemeanor unless the alleged crime was committed in the officer's presence. Boone v. State, 105 N.M. 223, 226, 731 P.2d 366, 369 (1986). The Fourth Amendment of the United States Constitution, however, does not prohibit arrests for misdemeanors committed outside the presence of the arresting officer. Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997); Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995); Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990); Street v. Surdyka, 492 F.2d 368, 372 (4th Cir. 1974).

are protected by qualified immunity. I shall consider each incident in turn.

(a) **The December Arrest.** On December 13, 1996, in addition to reviewing the court orders, officers Gentry and Conners investigated the facts at the babysitter's house. That investigation included interviewing the babysitter, Angela Zittlosen and Russell Zittlosen. They learned that Plaintiff had gone to Angela Zittlosen's residence to see the child without a written time sharing agreement allowing him to do that. They were told that Plaintiff entered the babysitter's residence, took physical custody of the child, and removed her to his parked car where he remained until Angela Zittlosen returned and called the police. Officer Gentry's affidavit states:

> Angela Zittlosen also told me that she was very afraid of Russell Zittlosen and called for DPS assistance because she was concerned for the safety of [the child] and herself. According to Angela Zittlosen, Russell Zittlosen had previously threatened to harm [the child] and her and had announced his intention to remove [the child] from the state.

Def. Stmt. Of Material Fact ("SOMF") #14; Aff. Gentry ¶6 at 2-3. Plaintiff responds to SOMF #14 by claiming it is hearsay, disputed and immaterial. In the context of this motion, the statements are not hearsay because they are not presented for the truth of the matters asserted, but rather to show what information was available to the arresting officer in making his probable cause determination. The statements are material to that determination. Nowhere does Plaintiff dispute that Angela Zittlosen made these statements to Officer Gentry.

Were the statements reliable? The burden rests on Plaintiff to demonstrate that the

statements made by Angela Zittlosen were not reasonably trustworthy. Romero v. Fay, 45 F.3d at 1476 n.1. Plaintiff argues only that the officers could not reasonably rely upon such statements because they were "the allegations of an emotional woman in the midst of divorce. ..." Pl. Resp. at 17. This is insufficient to negate the reliability of the statements. Similar statements were made in Angela Zittlosen's application for a TRO, *see* Def. Ex. B, and a TRO was issued by Judge Lang based at least in part upon those statements. *See* Def. Ex. A-(B). Apparently as a result of the December 13 encounter between the parties, Angela Zittlosen made the more serious allegations about Plaintiff in her Affidavit in which she sought to have Plaintiff held in contempt. *See* Def. Ex. D. At the ensuing hearing attended by both parties, Judge Lang issued the Minute Order. *See* Def. Ex. E-(A). Even assuming the statements made by Angela Zittlosen were untrue or exaggerated, Plaintiff has failed to show that they did not constitute reasonably trustworthy information to Officer Gentry at the scene of the domestic disturbance on December 13.

I conclude that Officer Gentry is entitled to qualified immunity for the December 13 warrantless arrest because under all the factual circumstances he had probable cause to believe Plaintiff had committed a crime by violating an order under the FVPA.

**(b) The February Arrest.** When officers Chapman and Camacho arrived at the Furr's supermarket on February 2, 1997, they were told Plaintiff was

prohibited from approaching within 100 yards of Angela Zittlosen, and they may have been shown the Minute Order to this effect. The officers interviewed Angela Zittlosen who told them that Plaintiff had approached her in the grocery store, hugged the child, and brushed up against her. She also told them that she customarily shopped at that particular supermarket on Sunday afternoons and that Plaintiff knew her routine. When they interviewed Plaintiff, the officers learned that he lived in Albuquerque. He maintained that he had driven to Rio Rancho to shop at that supermarket "for the sales." Although Plaintiff insisted that the contact with Angela and the child was just a coincidence, the officers were suspicious that he had traveled approximately five miles to the Rio Rancho store of a chain that has several stores in Albuquerque that are likely closer to where Plaintiff was living. Plaintiff disputes that other Furr's stores in Albuquerque are closer to his home than the Rio Rancho store, but that is not a material dispute. It was a reasonable suspicion under the circumstances. Plaintiff also admitted to the officers that he had come close to Angela Zittlosen in the aisle of Furr's, and that he prolonged the contact by hugging the child. Based upon this information, the officers could have reasonably believed that Plaintiff violated the restraining orders.

I conclude that Officer Chapman is entitled to qualified immunity for the February arrest because under all the factual circumstances he had probable cause to believe Plaintiff had committed a crime by violating an order under the FVPA.

### 3. Municipal Liability Under § 1983.

The City of Rio Rancho, as a municipality, is not protected by qualified immunity, and a finding of qualified immunity on the part of the individual officers does not necessarily shelter a municipality from liability. *See, e.g.,* Hinton v. City of Elwood, Kansas, 997 F.2d 774, 782-83 (10th Cir. 1993); Medina v. City and County of Denver, 960 F.2d 1493, 1499-1500 (10th Cir. 1992); Watson v. City of Kansas City, 857 F.2d 690, 697 (10th Cir. 1988). When individual officers are entitled to qualified immunity because the law was not clearly established, then a municipality may still be liable for failure to train the officers, or for having an illegal custom or policy, if the elements of those claims can be established. However, when the individual officers are entitled to qualified immunity because they did not commit a violation of Plaintiff's constitutional rights, there is no municipal liability. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Hinton, 997 F.2d at 782-83; Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447-48 (10th Cir. 1990); Watson, 857 F.2d at 697. When a finding of qualified immunity is predicated on the basis that an officer's conduct did not violate the law, that is equivalent to a decision on the merits of the plaintiff's claim, and such a finding precludes the imposition of any municipal liability. Hinton, 997 F.2d at 782-83.

In this case, because I have determined that under federal constitutional standards the officers had probable cause for both arrests, it follows that there has been no federal constitutional violation and that the City of Rio Rancho cannot be liable under § 1983.

### D.    State Tort Claim - False Arrest

Defendants contend that because the officers had probable cause to arrest Plaintiff for a violation of an FVPA order, they are entitled to immunity under the Act.[5] Because I am dismissing the federal claim based on the arrests, I will decline to accept supplemental jurisdiction of the state tort claim alleging false arrest and will dismiss that claim without prejudice. Several considerations caution such restraint.

There has been a veritable sea change in the way police are authorized to respond to potentially and actually violent and abusive behavior in New Mexico and all across the country in recent years. Gone are the days when domestic abusers could not be arrested unless the police actually observed the abuse. Despite the strong state policy favoring arrest warrants, *see* Campos v. State, 117 N.M. 155, 159, 870 P.2d 117, 121 (1994) ("We strongly favor the warrant requirement...."), the New Mexico Legislature has enacted at least two statutes authorizing warrantless arrests in cases of domestic abuse:  the FVPA; and the New Mexico Criminal Procedure Act, N.M. Stat. Ann. 1978 § 31-1-7 (1998 Supp.) (providing that an officer at the scene of a domestic disturbance who has probable cause to believe that a person has committed an assault or battery upon a household member may arrest that person without a warrant). The parameters of these statutes have yet to become clearly established in state law, and the policy implications are important

---

[5] "Any law enforcement officer responding to the request for assistance under the Family Violence Protection Act is immune from civil liability to the extent allowed by law. ..." § 40-13-6(D) (1998 Supp.).

and far-reaching. Whether to construe the FVPA narrowly because it is in derogation of common law, or broadly to further the worthy purposes of protection of abuse victims, is a question that implicates these state interests.

The orders in this case may not have been issued pursuant to the FVPA, so that the immunity granted by § 6(D) of the Act would not apply. New Mexico law has more stringent standards for warrantless arrests, requiring both probable cause and exigent circumstances in the case of felonies, and requiring that the offense be committed in the presence of the arresting officer in the case of misdemeanors. Federal courts should avoid deciding social policy issues unnecessary to their decisions. Interpretation and application of state statutes that involve important questions of state law, such as the competing interests between rights of criminal suspects and domestic abuse victims, are best left to the state courts.

### E. Fourth Amendment Right to Prompt Probable Cause Determination After Warrantless Arrest

In their motion for summary judgment, the Rio Rancho Defendants did not assert qualified immunity on the claim that Plaintiff's constitutional rights were violated by the alleged failure to be provided with a probable cause determination within 48 hours after his warrantless arrest. In his response, Plaintiff contends that the Rio Rancho Defendants are not entitled to qualified immunity on this claim, and in their reply brief Defendants argue only that they had no responsibility to ensure a prompt probable cause

determination once they delivered Plaintiff to SCDC and placed their Statements of Probable Cause in the appropriate Magistrate Court box.

A criminal defendant arrested without a warrant has a right to a reasonably prompt probable cause determination by an independent magistrate, and if the detention lasts longer than 48 hours, the burden is on the government to show some extraordinary circumstance to explain the delay. County of Riverside v. McLaughlin, 500 U.S. 44, 56-58 (1991); Gerstein v. Pugh, 420 U.S. 103 (1975).

Defendants argue that Plaintiff has not alleged and cannot allege that they had any duty to provide him with a prompt probable cause determination. I disagree. McLaughlin contemplates that a delay in providing a prompt probable cause determination may rest on one or more of several elements of the criminal justice system, which includes the arresting officers, supervisors, jailers, and magistrates. "Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail. One way to do so is to provide a judicial determination of probable cause immediately upon completing the administrative steps incident to arrest--i.e., as soon as the suspect has been booked, photographed, and fingerprinted." McLaughlin, 500 U.S. at 58.

Plaintiff alleges that criminal complaints were never filed by the arresting officers, and that this may explain why the Magistrate Court did not set a probable cause hearing. N.M. SCRA 6-201(D) provides:

23

> In all criminal cases, ... if the defendant is arrested without a warrant, a criminal complaint shall be prepared and given to the defendant prior to transferring the defendant to the custody of the detention facility. If the defendant is in custody, the complaint shall be filed with the magistrate court at the time it is given to the defendant. ...

Officers Gentry and Chapman state in separate affidavits that they submitted copies of their Statements of Probable Cause to the Magistrate Court immediately after Plaintiff's arrests in December and February, and that once they have completed the booking of a suspect and submitted their statements, they have no further involvement in the setting of a probable cause hearing. They contend that the Statements of Probable Cause they placed in the box for the Magistrate Court conform in every material respect to the criminal complaint requirements. Plaintiff claims that without discovery he cannot determine the extent of the Rio Rancho Defendants' responsibility in this alleged Fourth Amendment violation. Plaintiff is entitled to discover why he was not provided with a prompt probable cause determination. Defendants have not met their burden of establishing that under the undisputed facts they are entitled to judgment as a matter of law. Summary judgment will be denied to the Rio Rancho Defendants on the federal claim for unconstitutional detention and on the state law claim for false imprisonment.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's Objections to Memorandum Opinion and Order Denying Request for Discovery and Denying Motion for Deferral of Ruling on Motion for Summary Judgment are hereby OVERRULED.

24

IT IS FURTHER ORDERED that the Rio Rancho Defendants' Motion for Summary Judgment is hereby GRANTED IN PART. A Partial Summary Judgment shall be entered concurrently herewith granting the Rio Rancho Defendants judgment on the federal claim based upon the allegedly illegal arrests.

IT IS FURTHER ORDERED that the state tort claim based on the allegedly false arrests is hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is hereby DENIED IN PART. The case will proceed against all Defendants on the federal and state claims based upon the allegedly illegal detentions without prompt judicial probable cause determinations.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Jane Gagne, VANZI & GAGNE, Albuquerque, N.M.

Counsel for Defendants: Randy S. Bartell, VIRTUE, NAJJAR & BARTELL, Albuquerque, N.M.